# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANITA MILLER and ADAM HICKS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>EMERSON ELECTRIC COMPANY and WHIRLPOOL CORPORATION d/b/a INSINKERATOR OR INSINKERATOR, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:23-CV-03797<br><br><br>Judge Edmond E. Chang |

## MEMORANDUM OPINION AND ORDER

Anita Miller and Adam Hicks bring a proposed class action against InSinkErator, LLC, alleging that a specific type of the company's "Badger"-brand garbage disposal is defective. R. 12, Am. Compl.[1] The Plaintiffs assert common law claims for breach of express warranty, breach of implied warranty, breach of contract (and unjust enrichment in the alternative), negligence, and fraudulent concealment, as well as claims under the consumer protection laws of Illinois and Missouri. *Id.*[2] InSinkErator moves to dismiss the claims for failure to adequately state a claim under Civil

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has subject matter jurisdiction over this case under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2), because there are 100-plus class members; the amount in controversy exceeds $5,000,000; and there is minimal diversity given that even the named Plaintiffs are citizens of a different state from InSinkErator: Miller is a citizen of Illinois and Hicks is a citizen of Missouri, Am. Compl. ¶¶ 33, 36, whereas InSinkErator is an LLC with one member, Whirlpool Corporation (which in turn is a Delaware corporation with a Michigan principal place of business), R. 100.

Rule 12(b)(6). R. 27, Def.'s Mot. For the reasons below, InSinkErator's motion to dismiss is granted in part and denied in part.

## I. Background

In deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). InSinkErator is well known as the largest garbage-disposal manufacturer in the world. Am. Compl. ¶¶ 1–2. Garbage disposals are appliances installed underneath a kitchen sink and are designed to grind food waste into small particles that can pass through household plumbing and into the sewage system. *Id.* ¶¶ 54–55. The typical shelf life for a garbage disposal is 12 to 15 years. *Id.* ¶ 11. For 80 years, InSinkErator has offered "garbage disposals for every household and budget" to its consumers. *Id.* ¶¶ 1–3, 6.

In the 1990s, InSinkErator introduced the Badger model to the market. *Id.* ¶ 6. Consistent the goal of designing and selling garbage disposals at various price points, the Badger model is designed with zinc-galvanized steel—a less-expensive alternative to stainless steel—and retails for $100 to $200. *Id.* ¶¶ 3, 6, 8. Like its more-expensive stainless-steel counterparts, InSinkErator markets the Badger as being made with "rugged galvanized steel (for disposer durability)," setting the "standard for performance and reliability," and delivering "advanced performance for home garbage disposals." *Id.* ¶¶ 6–7. Each Badger comes with an express warranty, promising that the disposal will be free from defects in "materials and workmanship":

> This limited warranty is provided by InSinkErator®, a business unit of Emerson Electric Co., … to the original consumer owner of the InSinkErator product with which this limited warranty is provided …, and any subsequent owner of the residence in which the Product was originally installed ….

> InSinkErator warrants to Customer that your InSinkErator Product will be free from defects in materials and workmanship, subject to the exclusions described below, for a period of [1–4] years (the "Warranty Period"), commencing on the later of: (a) the date your InSinkErator Product is originally installed, (b) the date of purchase, or (c) the date of manufacture as identified by your InSinkErator Product serial number.

Am. Compl. ¶ 89. The Plaintiffs also allege that, before this lawsuit, Whirlpool, a distributor of InSinkErator disposals, had on its website a "Service Life Representation" stating that the average service life of the Badger model is six to eight years when used properly. *Id.* ¶ 13.

Plaintiffs Anita Miller and Adam Hicks (as well as other formerly named plaintiffs, who have since voluntarily dismissed their claims) each had a Badger installed in their home kitchens, expecting a reliable garbage disposal that would be fit for ordinary household use. *Id.* ¶¶ 102, 107, 112, 114–16, 122, 126, 128, 130, 141, 146, 148, 150, 157. The Plaintiffs used their Badgers in ordinary ways, yet the Badgers failed prematurely by the third year of use. *Id.* ¶¶ 102–05, 117–20, 129–37, 149–53. When the Badgers failed, water seeped out of the appliance, not only causing cracks and damage to the Badgers, but also causing water to leak into the kitchen cabinets surrounding the sink, sometimes causing damage to the cabinets and kitchen flooring. *Id.*

After discovering that their Badgers were leaking, the Plaintiffs stopped using them to prevent further damage. *See* Am. Compl. ¶¶ 105, 120, 139, 153. The Plaintiffs

then researched the product online and found numerous other consumers who had the same problems with their Badgers. *Id.* ¶¶ 106, 121, 142. The Plaintiffs all believe that the use of zinc-coated galvanized steel (rather than stainless steel) caused the disposal's premature corrosion, as well as the leaks and resulting damage to their kitchens. *See id.* ¶ 8. The Plaintiffs characterize the choice of material (that is, zinc-coated galvanized steel rather than stainless steel) as a latent defect that "result[s] in total failure and leakage well before the expected average service life of a garbage disposal," and renders the Badgers "not suitable for their intended use as household garbage disposals that safely dispose of food waste." *Id.* ¶¶ 10, 20. Had they known that the zinc-coated galvanized steel would lead to premature leaking, the Plaintiffs allege, then they would not have bought the product or would have paid less for it. *Id.* ¶¶ 109–110, 123–24, 143–44, 156–57. InSinkErator's alleged misrepresentations and material omissions about the Badgers are the basis of the Plaintiffs' claims. Am. Compl.

## II. Legal Standard

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up).[3] These allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). And Rule 9(b)'s heightened pleading standard applies to fraud claims brought under the state consumer protection laws at issue here. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Thus, Rule 9(b) requires that [party]'s complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

(cleaned up). Put differently, her complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441–42 (cleaned up).

## III. Analysis

The questions here arise from alleged violations of state law. When applying state law, the Court is "bound by the decisions of the state's highest court." *In re Emerald Casino, Inc.*, 867 F.3d 743, 765 (7th Cir. 2017). If the state's highest court has not ruled on a question, then the Court must "decide the case like the state's high court would if presented the issue." *Id.* Intermediate state court decisions, though not binding, may guide a federal court's determination of how the state's highest court might rule. *Id.* "When an intermediate state court announces a rule of law, 'that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

## A. Express Warranty (Count I)

The Plaintiffs claim that InSinkErator breached its express warranty by selling Badgers that were not free of defects in materials for the year after purchase and by refusing to repair or replace the defective Badgers. *See* Am. Compl. ¶¶ 213–32, 235–45. The Plaintiffs also attack the limitations in the express warranty as unconscionable. *Id.* ¶¶ 233–34. InSinkErator responds that the Plaintiffs fail to adequately state an express-warranty claim because they really are complaining about a *design* defect—not a *materials* defect—and design defects are not covered by the express

6

warranties. Def. Mot. at 4. InSinkErator also argues that other flaws undermine the express-warranty claim: the Plaintiffs rely on disclaimed warranties; the Plaintiffs did not give the company a chance to repair or replace the defective Badgers; Miller did not discover the defect within the warranty period; and the warranty is not procedurally or substantively unconscionable. Def. Mot. at 5–10. On the governing substantive law, the elements of a successful claim for breach of warranty are similar under Illinois, California, Massachusetts, and Missouri state laws. In those states, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform" to the description. 810 ILCS 5/2-313; *see also* Cal. Com. Code § 2313; Mass Gen. Laws ch. 106, § 2-313(1); Mo. Stat. §§ 400.2–313.1(a) and 400.313.2. To plead breach of express warranty, then, the Plaintiffs must adequately allege "(1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty." *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 867 (N.D. Ill. 2021) (cleaned up). The express-warranty elements are not meaningfully different under California, Massachusetts, or Missouri law, so the Court will consider the Plaintiffs' claims together. *See Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1333 (C.D. Cal. 2013) (applying California law); *Taupier v. Davol, Inc.*, 490 F. Supp. 3d 430, 438 (D. Mass. 2020);

(applying Massachusetts law); *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. 2010) (en banc).

The Plaintiffs rely on InSinkErator's "In-House Full Service Limited Warranty" as the basis for the express-warranty claim. Am. Compl. ¶ 14. The warranty represents to the consumer, among other promises, that the ultimate purchaser's InSinkErator product "will be free from defects in *materials and workmanship* … for a period of [1–4] years ("the Warranty Period"), commencing on the later of: (a) the date [the] InSinkErator Product is originally installed, (b) the date of purchase, or (c) the date of manufacture as identified by [the] InSinkErator Product serial number." *Id.* ¶ 89 (emphasis added). The Plaintiffs allege that InSinkErator breached this warranty because the Badgers "were defectively designed and/or manufactured with" inadequate, improper, or inferior materials and "the Defect [(InSinkErator's choice of zinc-coated galvanized steel)] exists at the time it leaves the manufacturing facility." *Id.* ¶¶ 8, 22, 28, 90. The Plaintiffs also contend "that the Defect may be due to improper material selection, defective design, and/or manufacture," all of which allegedly are covered by the warranty for materials and workmanship. *See* R. 37, Pls.' Resp. at 6.

The problem with the express-warranty claim is that the Amended Complaint sets forth a *design* defect claim, Am. Compl. ¶¶ 213–45, not a defect "*in* materials and workmanship," as covered in the quoted portion of the warranty. *Id.* ¶ 89 (emphasis added). There is no defect "in" the materials of the Badgers, at least as alleged by the Plaintiffs. In other words, the Plaintiffs are *not* asserting that the zinc-coated

8

galvanized steel was somehow flawed as compared to non-defective zinc-coated galvanized steel—the Badgers conform exactly to the intended design of the product. Instead, what the Plaintiffs are really challenging is the intended design itself—the choice to use zinc-coated galvanized steel—and that is what renders the Badgers defective. *See Krafcky v. Makita U.S.A., Inc.*, 2024 WL 1376066, at *4–5 (N.D. Ill. Mar. 31, 2024) (citing *Donaldson v. Johnson & Johnson*, 37 F.4th 400, 407 (7th Cir. 2022)) (distinguishing between design defects and "materials and workmanship" defects). A manufacturing defect, in contrast, "occurs when one unit in a product line is defective." *Id.* at *4. As InSinkErator correctly points out, the Plaintiffs do not allege a manufacturing defect—that is, that their specific Badgers were manufactured in a way that deviated from the intended design. This distinction is important because design defects are not covered by "materials and workmanship warranties under Illinois, California, Massachusetts, and Missouri law. *See, e.g.*, *Krafcky*, 2024 WL 1376006, at *5 (citing *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 520, 527 (7th Cir. 2003)); *Hobbs v. Brother Int'l Corp.*, 2016 WL 7647674, at *11 (C.D. Cal. Aug. 31, 2016); *Rezendes v. Mitsubishi Motors N. Am., Inc.*, 2023 WL 1864405, at *6 n.3 (D. Mass. Feb. 9, 2023); *Hartley v. Sig Sauer*, 2019 WL 11639620, at *4 (W.D. Mo. Mar. 25, 2019).

It also seems that Plaintiffs argue that the purported "Service Life Representation" is another express warranty. Pls.' Resp. at 5. The Service Life Representation is a statement on InSinkErator's website (but not included in the written express warranty) that says that the Badger model has an average service life of six to eight

9

years. Am. Compl. ¶ 13. In their response brief, the Plaintiffs say that there are *three* express warranties are at issue, including the Service Life Representation. Pls.' Resp. at 5. Beyond this introductory statement in that section of the brief, however, Plaintiffs do not substantively rely on the Service Life Representation to support their express-warranty claim either in the Amended Complaint or elsewhere in their response brief. *See* Am. Compl. ¶¶ 213–45; Pls.' Response at 5–11.

In its reply brief, InSinkErator covers its bases and replies that "Plaintiffs cannot predicate their express warranty claims on statements outside the warranty"— including the Service Life Representation—because "[t]hat warranty disclaims all other express warranties. Def.'s Mot. at 10. InSinkErator is correct. The Badger's limited warranty has an explicit disclaimer saying in relevant part: "This limited warranty is the sole and exclusive warranty provided to the Customer identified above. No other express warranty, written or verbal applies." R. 27-1, Uthank Decl. Exh. A. The laws of Illinois, California, Massachusetts, and Missouri all honor disclaimers in express warranties as reflecting the parties' intended allocation of risk in the transaction. *See Collins Co. v. Carboline, Co.*, 532 N.E.2d 834, 838 (1988); *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 756 (N.D. Cal 2019); *Marcil v. John Deere Indus. Equip. Co.*, 403 N.E.2d 430, 433 (Mass. App. Ct. 1980); *Karr-Bick Kitchens & Bath, Inc. v. Gemini Coatings, Inc.*, 932 S.W.2d 877, 879 (Mo. Ct. App. 1996). Here, the disclaimer explains that the parties intended that the written express warranty serve as the only express warranty. It follows that the Plaintiffs' (cursory) reliance on the Service Life Representation as part of the express warranty fails.

So, even taking the Plaintiffs' allegations as true, the express warranty does not cover the design defect that the Plaintiffs challenge. And the Plaintiffs do not separately allege that the Badgers suffered from any manufacturing defect that would be covered by the "materials and workmanship" warranty. Nor can the Plaintiffs premise express-warranty claim on the Service Life Representation. There is no need to address the other arguments on the express-warranty claim: it must be dismissed.

### B. Implied Warranty (Count 2)

InSinkErator moves to dismiss Miller's claim (and before Simmons voluntarily dismissed his claim, Simmon's claim) for breach of implied warranty because she lacks privity. Def. Mot. at 10–12. InSinkErator also moves to dismiss all of the Plaintiffs' claims because the allegations are, in the defense's view, implausible. *Id.* at 12–13. Miller responds that she can invoke an exception to the privity requirement. Pls.' Resp. at 12–13. All of the Plaintiffs insist that breach of implied warranty is adequately alleged. *Id.* at 14–15.

### 1. Privity under Illinois and California Law

Implied warranties are implied by law into every contract for goods. Though privity of contract is not required for implied-warranty claims under Massachusetts and Missouri law, under Illinois and California law, implied warranties generally cover only the relationship between buyers and immediate sellers. *Elward Electrolux Home Prods. Inc.*, 214 F. Supp. 3d 701, 704 (N.D. Ill. 2016) (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029 (Ill. 1988)); *Clemens v. DaimlerChrysler Corp.*,

11

534 F.3d 1017, 1023–24 (9th Cir. 2008) (analyzing Cal. Com. Code § 2314). Illinois and California law, however, recognize exceptions to the privity requirement: Illinois recognizes the direct-relationship exception and the third-party beneficiary exception, while California recognizes only the third-party beneficiary exception.

On the direct-relationship exception, under Illinois law, a plaintiff may state a claim for breach of implied warranty when there are "direct dealings" between the manufacturer and the customer, that is, when the ultimate purchaser (like Miller, in this case) communicates directly with the manufacturer (InSinkErator). *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1056 (N.D. Ill. 2022); *Rothe*, 518 N.E.2d at 1029–30. Illinois law also excuses the privity requirement under the third-party beneficiary exception, that is, "where … the manufacturer knew the identity, purpose, and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. Ct. 1980).

Miller, the plaintiff from Illinois, fails to adequately allege that the direct-relationship exception applies to her. It is well understood that the Illinois Supreme Court is hesitant to recognize exceptions to the privity requirement for implied-warranty claims. *See, e.g.*, *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1123–25 (N.D. Ill. 2019) (citing *Rhodes Paracal Co. v. Cont'l Can Co.*, 219 N.E.2d 726 (Ill. App. Ct. 1966); *Szanja v. Gen. Motors Corp.*, 503 N.E.2d 760, 767 (Ill. 1986); *Rothe*, 518 N.E.2d at 1029–30; *Sienna Ct. Condo. Ass'n v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 1119–1121 (Ill. 2018)); *Rodriguez*, 596 F. Supp. 3d at 1056.

12

Here, Miller tries to fit into the exception by relying on what she calls InSinkErator communications with her through its "website representations, warranties, owner's manuals, labeling and marketing, through employees receiving warranty claims, in responding to consumer complaints online, and through authorized retailers." Pls.' Resp. at 12; Am. Compl. ¶¶ 61, 194. But those are just the ordinary general communications between manufacturers and consumers, not specific, direct communications with Miller when she made the purchase. *E.g., Rhodes*, 219 N.E.2d at 732 (finding the direct-dealing exception applied where the buyer's employees met with the manufacturer to discuss the product's design). Given the narrow purview of this exception under Illinois law, the ordinary-course advertisements and warranties issued by InSinkErator were not sufficiently direct with Miller to form the direct-relationship exception.

Nor is Miller within the class of consumers to which the third-party beneficiary exception applies. To satisfy the third-party beneficiary exception, Miller needed to (but did not) plausibly allege that InSinkErator knew *her* identity, purpose, and requirements for the Badger, not (as she argues) just the *general* identity, purpose, and requirements for consumers *en masse*. Pls.' Resp. at 12–13. Because Miller did not sufficiently allege the application of either exception to the privity requirement under Illinois law, her implied-warranty claim must be dismissed.[4]

---

[4]If Simmons had remained in the case (remember that he voluntarily dismissed his claims, R. 86), then he would have likely met the more relaxed third-party beneficiary exception to the privity requirement under California law. "The courts recognizing a third-party beneficiary exception to the privity requirement typically cited *Gilbert Financial Corporation*

## 2. Implied Warranty of Merchantability (Hicks)

Hicks's implied-warranty claim also fails. To state a breach of implied warranty of merchantability under Missouri law, Hicks must adequately allege that the product was not fit for its ordinary use. *See Dack v. Volkswagen Grp. of Am.*, 565 F. Supp. 3d. 1135, 1148 (W.D. Mo. 2021). But the allegations in the Amended Complaint in effect admitted that the Badgers *did* have the basic degree of fitness for ordinary use—Hicks alleged that the Badger worked properly for a time before prematurely failing. Am. Compl. ¶¶ 150–53. Even taking the facts in the light most favorable to Hicks, he failed to adequately state a claim for breach of implied warranty.[5]

---

*v. Steelform Contracting Company*, 82 Cal. App. 3d 65 (1978), in support." *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 943 (N.D. Ill. 2021) (cleaned up). In *Gilbert*, the California Court of Appeals concluded that California Civil Code § 1559 permitted the plaintiff, who was a third-party beneficiary of a contract between a contractor and subcontractor, to sue the contractor directly for breach of implied warranty. *Gilbert*, 82 Cal. App. 3d at 69. This means that California courts have permitted ultimate purchasers of goods to recover for implied-warranty claims even when the contractual relationship was between the distributor and the retailer, because the distributors were never intended to be the ultimate consumer. *See Arnold v. Dow Chemical Co.*, 110 Cal. Rptr. 2d. 722, 738–40 (Cal. Ct. App. 2001). Because Simmons adequately alleges that he was the intended consumer of his Badger, see Compl. ¶¶ 114, 119, the privity requirement would likely have been adequately alleged.

[5]If Schubert had not been voluntarily dismissed from the case, then the Court likely would have held that she too fails to state an implied-warranty claim under Massachusetts law. For an implied-warranty claim under that state's laws, the plaintiffs must allege that "(1) the defendant manufactured or sold the product that eventually injured the plaintiffs; (2) the product had a defect or otherwise unreasonably dangerous condition such that it was unsuited for the ordinary purpose for which it was sold; (3) the plaintiff used the products as intended by the defendant or in a manner that was at least foreseeable to the defendant; and (4) the defect or unreasonably dangerous condition was a legal cause of the plaintiff's injury." *Taupier v. Davol, Inc.*, 490 F. Supp. 3d 430, 439–40 (D. Mass. 2020) (cleaned up). The viability of Schubert's implied-warranty claim is a closer call than Hicks's. But it seems that Massachusetts law reserves implied-warranty claims for products that are unreasonably dangerous on safety grounds, like dysfunctional hockey helmets or surgical mesh patches, rather than for products that are merely inadequate or have a flaw. *See Evertt v. Bucky Warren, Inc.*, 380 N.E.2d 653 (Mass. 1978) (hockey helmets); *Taupier*, 490 F. Supp. 3d 430 (surgical mesh).

### 3. Implied Warranty of Fitness for a Particular Purpose

Hicks also brings an implied-warranty claim based on the Bader's failure to be fit for a particular purpose. Am. Compl. ¶¶ 257, 261–62. Under California, Massachusetts, and Missouri law (the latter of which applies to Hicks' claim), "[t]he warranty of fitness for a particular purpose is similar to the warranty of merchantability but applies only where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *Taupier*, 409 F. Supp. 3d at 444 (cleaned up); *see also Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013); *Renaissance Leasing, LLC*, 322 S.W.2d at 130. The Amended Complaint contains only general allegations that InSinkErator knew or should have known that the Badgers would not be suitable for ordinary home use. Am. Compl. ¶ 266. The Amended Complaint has no allegations that InSinkErator knew the identity of the particular consumers or that the consumers required certain specifications, both of which are necessary allegations for pleading an implied-warranty claim based on lack of fitness for a particular purpose. *See* Am. Compl. The Plaintiffs do not adequately state a claim for breach of implied warranty of fitness for a particular purpose.

---

Because Schubert has not alleged that the leaky Badger created a danger of the same degree, the implied-warranty claim would have failed.

### C. Breach of Contract (Count 3) and Unjust Enrichment (Count 4)

The Plaintiffs also plead what they characterize as an "alternative" claim for breach of contract, and also—as an alternative to the alternative—an unjust-enrichment claim. Pls.' Resp. at 14; Am. Compl. ¶¶ 270, 273–76. It is true that Civil Rule 8(d)(2) permits a plaintiff to allege "2 or more statements of a claim … either in a single count or defense or in separate ones." "Although a plaintiff may not obtain a double recovery, he may certainly plead multiple, even contradictory paths to a single recovery." *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 725 (N.D. Ill. 2021). It follows that a plaintiff may not recover under an unjust enrichment theory when a contract governs the parties' relationship, but a plaintiff "may plead breach of contract and unjust enrichment claims in the alternative." *E.g.*, *Velez v. RM Acquisition, LLC*, 670 F. Supp. 3d 620, 646 (N.D. Ill. 2023) (quoting *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 886–87 (7th Cir. 2022)). So there is no problem with trying to plead contract (and unjust-enrichment) claims as an alternative to warranty claims.

But to successfully state a claim for breach of contract, the Plaintiffs must plausibly allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). There is no meaningful difference in the analysis for contract claims under Missouri law (or, for that matter, California or Massachusetts law), so the Court will

16

consider the Plaintiffs' claims together. *See Satvati v. Allstate Northbrook Indemnity Co.*, 634 F. Supp. 3d 792, 797 (C.D Cal. 2022) (citing *Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 78 Cal. Rptr. 2d 724, 733 (Cal. Ct. App. 1998)); *Scholz v. Goudreau*, 901 F.3d 37, 43 (1st Cir. 2018) (applying Massachusetts law); *City of Carthage v. Union Pac. R.R. Co.*, 603 F. Supp. 3d 711, 732 (W.D. Mo. 2022) (citing *Watterson v. Wilson*, 628 S.W.3d 822, 830 (Mo. Ct. App. 2021)). Courts "aim to ascertain the parties' intent by first consulting the plain and ordinary meaning of the contract language." *Page v. Alliant Credit Union*, 52 F.4th 340, 346 (7th Cir. 2022) (cleaned up). "If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a [] court cannot properly determine on a motion to dismiss." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 526 (7th Cir. 2022) (quoting *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (1990)).

The problem is that there is no contract term (or, for the unjust-enrichment claim, no premise for the transaction) to which the Plaintiffs' plausibly allege has been breached separate and independent of the express-warranty claim. In the Amended Complaint, the Plaintiffs point only to the written warranty, Am. Compl. ¶¶ 270, 273–76, but for the reasons explained earlier, the written warranty provides no basis for attributing a breach of a representation or promise to InSinkErator. Worse, the Plaintiffs' response brief offers no substantive analysis for the contract and the unjust-enrichment claims. Pls.' Resp. at 14. In a single, two-sentence paragraph on those claims, the Plaintiffs say only that pleading in the alternative is

permissible. It is. But how the Plaintiffs have alleged a plausible contract claim or unjust-enrichment claim is left unsaid. *See id.* It is not the Court's place to fashion arguments for one side or the other. The contract and unjust-enrichment claims are dismissed.

### D. Negligence (Count 5) and Fraudulent Concealment (Count 6)

The Plaintiffs also bring a claim for negligence against InSinkErator. They assert that InSinkErator owed them a duty of reasonable care in manufacturing and distributing the Badgers; InSinkErator breached its duty when it placed defective products in the stream of commerce without warning consumers about the defect or addressing the products' problem; and the Plaintiffs' "property other than the products themselves," including cabinetry and flooring, was damaged as a result. Am. Compl. ¶¶ 285–95. InSinkErator counters that the economic-loss rule bars the claims because Miller does not assert that "the alleged defect caused damage to property beyond the Badger." Def. Mot. at 14.

Illinois and Missouri (and California and Massachusetts) follow the economic-loss doctrine, which prevents recovery for a negligence claim arising out of a contractual relationship unless the plaintiff's loss results from an injury to the plaintiff's person or property. *See, e.g., In re Chicago Flood Litig.*, 680 N.E.2d 265, 274–75 (Ill. 1997) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450–52 (Ill. 1982)); *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091–92 (C.D. Cal. 2017) (applying California law); *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 89 (D. Mass. 1998) (applying Massachusetts law); *R&R Propane, LLC v. Tiger*

18

*Payment Sols., LLC*, 2024 WL 4791984, at *7–8 (E.D. Mo. Nov. 14, 2024) (applying Missouri law). Negligence claims for "solely economic loss" to the product that is the subject of the litigation are barred because "they are best handled by contract, rather than tort." *City of Chicago v. Beretta U.S.A., Corp.*, 821 N.E.2d 1099, 1139 (Ill. 2004) (quoting *Moorman*, 435 N.E.2d at 450)).

InSinkErator miscasts the Plaintiffs' allegations. True enough, property-damage allegations are not raised in the fact-allegation sections specific to Miller. But the Complaint is clear that the negligence allegations—including the property-damage allegations—are brought on behalf of *all* plaintiffs individually (and, indeed, even on behalf of the class). Am. Compl. at 61, ¶¶ 292–93. Discovery may show that Miller did not experience property damage beyond the Badgers themselves, in which case the negligence claims might be barred by the economic-loss doctrine. At the pleading stage, however, the Plaintiffs have plausibly alleged property damage, and the other elements of their negligence claim (which InSinkErator does not challenge). So the claim survives. (InSinkErator does not appear to challenge Hicks's negligence claim, so that claim survives too.)

Next, InSinkErator contends that the Plaintiffs failed to adequately state a claim for fraudulent concealment because they failed to allege either an affirmative misrepresentation or fraud based on concealment or nondisclosure. Def. Mot. at 15–20. The company points to its warranties on service life, arguing that the Service Life Representation (that is, Badgers have an expected service life of six to eight years) is not deceptive and that InSinkErator's advertisements on "rugged" "durability" are

mere puffery. *Id.* at 15–17. The Plaintiffs respond that they have sufficiently alleged the "outline of the fraud scheme to reasonably notify the defendants of their purported role" in the scheme, which is enough to proceed into the discovery phase. Pls.' Resp. at 16 (cleaned up). In support of its position, the Plaintiffs assert that the representation as to service life is deceptive because InSinkErator was aware that the Badgers fail prematurely, did not disclose this fact to consumers, and refused to alter the Baders' design, manufacture, or material selection. *Id.* at 17; Am. Compl. ¶¶ 68, 70, 78, 95. The Plaintiffs also argue that the "rugged" "durability" representation is not puffery, because the entire representation—"Rugged Galvanized Steel Construction (For Disposer Durability)"—"suggests that the use of galvanized steel makes the Badgers durable garbage disposers," that are at least durable enough to last for six to eight years. Pls.' Resp. at 17; Am. Compl. ¶¶ 61, 194.

"In order to show fraudulent concealment, a plaintiff must prove that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Benson v. Stafford*, 941 N.E.2d 386, 402 (Ill. App. Ct. 2010) (cleaned up); *see also Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 888 (E.D. Cal. 2019) (citing *Burch v. CertainTeed Corp.*, 246 Cal.Rptr.3d 99, 106 (Cal. Ct. App. 2019)); *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 216–17 (D. Mass. 2023) (applying Massachusetts law); *Anderson v. Bass Pro Outdoor World, LLC*, 355 F. Supp. 3d 830, 840 (W.D. Mo. 2018) (citing *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007) (en banc)). Because a fraudulent concealment claim is subject to Rule 9(b)'s heightened pleading requirements, *see Pirelli*, 631 F.3d at

446–47, the facts alleged to support the claim must be "state[d] with particularity," Fed. R. Civ. P. 9(b). Here, the Plaintiffs have pled with particularity the "who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441–42 (cleaned up).

Taking the allegations in the light most favorable to the Plaintiffs, the consumer complaints about the Badger that were posted online gives rise to an inference that InSinkErator knew about the premature failures, and then despite that, InSinkErator concealed that fact from consumers by continuing to represent that the Badgers would last for six to eight years. *Id.* ¶¶ 13, 68, 70, 78, 95. The Plaintiffs have sufficiently alleged the who, what, when, where, why, and how of the fraud scheme based on the service-life representation to survive InSinkErator's motion to dismiss.

The "rugged … durability" representation is another matter. InSinkErator is correct that the durability representation is mere puffery. "Puffing denotes the exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 989 (N.D. Ill. 2013) (quoting *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910. 926 (Ill. 2007)). "Puffing typically consists of subjective descriptions relating to quality, such as 'high quality,' 'perfect,' and 'best.'" *Id.* (cleaned up). In general, puffery is the use of "meaningless superlatives that no reasonable person would take seriously, and so it is not actional as fraud." *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 817 (N.D. Ill 2016) (cleaned up).

21

It is a relatively close call, especially when giving the Plaintiffs the benefit of reasonable inferences, but the durability representation can only be understood as puffery. The terms "rugged" and "durable," even read in the context of the other warranties, do not elucidate anything *objective* about the Badgers. Put another way, "rugged" bears no objective meaning as to whether galvanized steel is strong enough to withstand certain conditions. Nor does "durable" necessarily mean that the product is meant to last longer than other products of similar construction. Without more, no reasonable person would take these terms seriously when considering a purchase, so the terms are not actionable as fraud.

### E. State Consumer Protection Laws (Counts 7–12)

The Plaintiffs allege violations of Illinois and Missouri consumer protection laws, as well as (previously) California and Massachusetts, presented through six separate causes of action. *See* Am. Compl. ¶¶ 308–95. InSinkErator moves to dismiss each of these claims, contending that "[a]ll the relevant statutes require Plaintiffs to plead that the alleged fraud caused injury," and that Plaintiffs do not allege causation. Def. Mot. at 17. It is true that each consumer-protection statute requires an element of fraud. But the Plaintiffs adequately allege this element under each statute.

*Illinois Consumer Fraud and Uniform Deceptive Trade Practices Act*, 815 ILCS 505/1; 815 ILCS 505/2 (Miller). The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits companies from deceiving consumers by engaging in "unfair or deceptive acts or practices … with the intent that others rely upon the

22

concealment, suppression, or omission of such material fact … in the contract of any trade or commerce." 815 ILCS 505/2. "The purpose of the Deceptive Trade Practices Act is to "enjoin[] … trade practices which confuse or deceive the consumer." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 952 (N.D. Ill. 2016) (citing *Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1156 (Ill. App. Ct. 1992)). To state a claim for a violation of the Act, Miller must allege—with particularity under Civil Rule 9(b)—the following: (1) an unfair or deceptive act or practice by InSinkErator; (2) committed with the intent that Plaintiffs and other consumers rely on it; (3) in trade or commerce; and (4) actual damage to Plaintiffs (5) proximately caused by the deception. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (citing *People ex rel. Hartigan v. Knecht Servs., Inc.*, 575 N.E.2d 1378, 1387 (Ill. App. Ct. 1991)). "Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception." *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) (citing *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 673 (7th Cir. 2015)).

*Missouri Merchandise Practices Act,* Mo. Rev. Stat. §§ 407.010 (Hicks). Under the Missouri Merchandise Practices Act, "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce" is unlawful.

23

Mo. Rev. Stat. § 407.020.1. To state a claim for a deceptive practice under the Missouri Merchandise Practices Act, the Plaintiffs must allege that (1) they purchased merchandise from InSinkErator; (2) they merchandise was for personal, family, or household purposes; (3) they suffered a ascertainable loss of money; and (4) the loss was the result of a deceptive act, as defined by the statute. *Ward v. W. Cty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. 2013) (en banc); Mo. Rev Stat. §§ 407.020, 407.025.1.

The Plaintiffs specifically allege the elements of each statutory claim in the Amended Complaint, and do so with the requisite particularity. *See* ¶¶ 308–95. More to the point, InSinkErator does not satisfactorily challenge the allegations under these statutes. Instead, InSinkErator groups together the consumer-protection claims with the fraud claims and generally argues that the allegations are insufficient. Def. Mot. at 15–20. Given the earlier discussion on the fraud claims, because InSinkErator has not demonstrated why each claim is implausibly alleged, the state consumer-protection claims may remain in the case.[6]

---

[6] If Simmons were still in the case, the California consumer-protection claims would have been adequately stated. The California Legal Remedies Act, Cal. Civil Code § 1750, prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Relevant here, the Act also prohibits representing that goods have certain benefits that they do not have or "are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." *Id.* §§ 1770(a)(5), (a)(7). The Act "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760. Finally, "[a]ny consumer who suffers any damage as a result of the use or employment if a method, act, or practice declared by Section 1770 may bring an action against that person to recover or obtain relief including actual damages, enjoining of methods, acts, or practices, restitution, punitive damages, or any other relief that the court deems proper." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1094 (9th Cir. 2017) (citing Cal. Civ. Code

24

## IV. Conclusion

For the reasons stated in this Opinion, InSinkErator's motion to dismiss the Amended Complaint, R. 27, is granted in part and denied in part. The claims for express warranty, implied warranty, breach of contract, and unjust enrichment are dismissed, as is the fraudulent-concealment claim insofar as it is premised on the durability representation. The claims for negligence and for fraudulent concealment (insofar as it is based on the Service Life Representation) survive the dismissal motion. The claims under Illinois and Missouri consumer-protection statutes also remain intact. On the dismissed claims, for now the dismissal is without prejudice. It is true

---

§ 1780(a)) (cleaned up). The California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, also would have applied. The law prohibits an individual or entity from engaging in any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each manner of violating the law makes up a separate and distinct theory of liability. *Ginsberg v. Google, Inc.*, 586 F. Supp. 3d 998, 1007–08 (N.D. Cal. 2022) (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009)). Lastly, the California False Advertisement Law, Cal. Bus. & Prof. Code § 17500 makes it "unlawful for any person doing business in California and advertising to consumers in California to make any false or misleading advertising claim, including claims that (1) purport to be based on factual, objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or (3) purport to be based on any fact." Cal. Bus. & Prof. Code § 17508.

Schubert's claim under the Massachusetts Consumer Protection Law, MGL c.93A § 2, also likely would have survived. Section 2 "makes unlawful any 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Ericson v. Conagra Foods, Inc.*, 559 F. Supp. 3d 705, 722 (N.D. Ill. 2021) (cleaned up). Massachusetts regulations explain that a practice is unfair or deceptive under Chapter 93A if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare." *Id.* "If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss—whether that loss be economic or noneconomic—the consumer is entitled to redress under [Massachusetts's] consumer protection statute." *Hershenow v. Enterprise Rent–A–Car Co. Of Boston*, 840 N.E.2d 526, 535 (Mass. 2006). The Plaintiffs must allege that InSinkErator's "unfair or deceptive act caused an adverse consequence or loss," but that loss need not be established in terms of ascertainable money damages. *Rhondes v. AIG Domestic Claims, Inc.*, 961 N.E.2d 1067, 1076 (Mass. 2012).

that the Plaintiffs have already amended the complaint once, but a second amended complaint would be the first amendment after receiving a substantive decision. Having said that, the Civil Rule 16(b) deadline has expired, *see* R. 21, so the Plaintiffs would have to show good cause to amend. That might very well be able to do that, but Rule 15(a)(2)'s expansive standard no longer applies. If the Plaintiffs wish to re-plead the dismissed claims, then they must move for leave to amend, supported by good cause, by April 16, 2025. If no motion is filed by the deadline, then the dismissals will convert to a dismissal with prejudice.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2025

26