UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANITA MILLER and ADAM HICKS, on behalf of themselves and all others similarly situated, | No. 1:23-CV-03797 |
| Plaintiffs, | Judge Edmond E. Chang |
| v. | |
| INSINKERATOR, LLC, | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Anita Miller and Adam Hicks allege that InSinkErator, LLC, manufactured and sold defective garbage-disposal models, and they seek to represent a class of similarly affected consumers.[1] *See generally* R. 12, First Am. Compl.[2] Discovery has closed, and the Plaintiffs now move to amend their complaint under Civil Rule 16(b). R. 152, Pls.' Mot. InSinkErator partially opposes the motion to amend, primarily

---

[1]This Court has subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Miller is an Illinois citizen, and Hicks is a Missouri citizen. R. 12, First Am. Compl. ¶¶ 33, 36. InSinkErator is a limited liability company organized under Delaware law with its principal place of business in Wisconsin. *Id.* ¶ 37; 28 U.S.C. § 1332(d)(10) (noting, for jurisdiction under the Act, citizenship of an unincorporated association (like an LLC) is its state of incorporation and principal place of business). The Plaintiffs seek to represent a class of thousands of consumers who have purchased the relevant garbage-disposal models, which retail for a few hundred dollars. First Am. Compl. ¶¶ 6, 209; *see also* R. 161, Pls.' Class-Certification Br. at 1 (estimating 15 million units sold nationwide during class period). So the amount in controversy is greater than $5,000,000; the parties are minimally diverse; and there are 100 or more members in the proposed classes. 28 U.S.C. § 1332(d)(2), (d)(5)(B).

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

because InSinkErator views some changes as impermissibly late expansions to the scope of litigation. R. 158, Def.'s Resp. at 1–2. For the following reasons, the Court denies the motion to amend.

## I. Background

The Plaintiffs filed this suit in June 2023. R. 1, Compl. Two months later, they filed what has functioned as the operative complaint. First Am. Compl. The Plaintiffs originally advanced 12 legal theories based on various states' laws, some under common law and others under the consumer-protection statutes of Illinois, California, Massachusetts, and Missouri. *Id.* ¶¶ 213–395.[3]

InSinkErator later moved to dismiss the Plaintiffs' claims. R. 27, Def.'s Mot. to Dismiss. Discovery began in parallel with the parties' briefing of InSinkErator's motion to dismiss, and the Court set June 10, 2024, as the deadline under Civil Rule 16(b) for the Plaintiffs "to add parties or amend pleadings." R. 21, 09/08/23 Minute Entry. Ultimately, the Court granted in part and denied in part InSinkErator's motion to dismiss. *Miller v. Emerson Elec. Co.*, 2025 WL 964905, at *11 (N.D. Ill. Mar. 31, 2025). In dismissing without prejudice some of the Plaintiffs' theories of liability, the Court also noted that the Rule 16(b) deadline had passed, so the Plaintiffs would

---

[3]Over the course of litigation, the Plaintiffs voluntarily dismissed claims by two named plaintiffs, who sought to represent classes of Massachusetts and California consumers, respectively. R. 70, Notice of Voluntary Dismissal of Pl. Schubert; R. 85, Notice of Voluntary Dismissal of Pl. Simmons. So the consumer-protection theories under Massachusetts and California law also were voluntarily dismissed. *See Miller v. Emerson Elec. Co.*, 2025 WL 964905, at *10 n.6 (N.D. Ill. Mar. 31, 2025).

need to demonstrate good cause to justify re-pleading the dismissed theories. *Id.* The Plaintiffs proposed no amendment at that point.

The parties completed fact and expert discovery on May 15, 2026. R. 147, 05/18/26 Joint Status Report. The Court then set a briefing schedule on the parties' disputes about class certification and expert opinions. R. 151, 05/28/26 Minute Entry. The Plaintiffs filed their motion to amend the operative complaint, R. 152, on June 30, 2026, and their motion for class certification, R. 160, two weeks later on July 14.

## II. Legal Standard

If the Rule 16(b) deadline to amend pleadings has passed, then a motion for leave to amend faces two hurdles that must be independently satisfied. *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 852 (7th Cir. 2022). First, a party must "establish 'good cause' for the late amendment." *Id.* (quoting Fed. R. Civ. P. 16(b)(4)). The requirement for "good cause" is a "heightened standard" whose "central consideration … is the diligence [or excusable neglect] of the party seeking to amend." *Id.* at 852–53 (citing Fed. R. Civ. P. 6(b)(1)).

Second, a party also must satisfy the standard under Civil Rule 15(a). *Allen*, 41 F.4th at 852. Under Civil Rule 15(a)(2), leave to amend should be "freely give[n] … when justice so requires." This is a "liberal" standard. *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 213–14 (2025). Courts, however, "may deny leave to amend for undue delay, bad faith, dilatory motive, prejudice, or futility." *Su v. Johnson*,

3

68 F.4th 345, 355 (7th Cir. 2023) (cleaned up);[4] *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. Analysis

The Plaintiffs' proposed amended pleading mostly narrows the facts and theories of the case. *See generally* R. 152-1, Proposed Second Am. Compl. For example, only two groups of garbage-disposal models remain at issue, and the legal theories that this Court dismissed earlier—as well as the named plaintiffs who were voluntarily dismissed—have been excised for clarity. *Id.* at 2, 21, 47. The Plaintiffs also withdraw a theory of negligence that was not dismissed. R. 153, Pls.' Br. at 3–4. InSinkErator (not surprisingly) does not challenge these narrowing proposals. *See generally* Def.'s Resp.

But InSinkErator opposes the Plaintiffs' two remaining proposed changes. First, the Plaintiffs seek to revise the allegations specific to Miller to clarify that her product did not leak. Pls.' Br. at 3; Proposed Second Am. Compl. ¶ 102. Second, the Plaintiffs aim to revise the proposed class definitions. Pls.' Br. at 4–5. *Compare* First Am. Compl. ¶¶ 201–06, *with* Proposed Second Am. Compl. ¶¶ 165–69.

The Court begins with the latter proposal. In the operative, First Amended Complaint, the Plaintiffs proposed (1) a nationwide class of consumers on whose behalf they alleged six theories of liability under common law, First Am. Compl. ¶¶ 202,

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

213–307; and (2) several state-based classes—Illinois, Missouri, Massachusetts, and California consumers—on whose behalf they alleged violations of the respective states' consumer-protection laws, *id.* ¶¶ 203–06, 308–95. The proposed, Second Amended Complaint offers definitions for two multi-state classes of consumers—one for common-law fraud and the other for violations of consumer-protection statutes.[5] Proposed Second Am. Compl. ¶¶ 166–67. If the multi-state classes are not certified, then the Plaintiffs alternatively seek to represent classes of Illinois and Missouri consumers. *Id.* ¶¶ 168–69. As to the statutory multi-state class, even the Plaintiffs acknowledge that their proposal amounts to an "addition[]" rather than a narrowing. *See* Pls.' Br. at 10.

The parties first dispute whether there is good cause for the expanding amendment to the theories of liability. In the Plaintiffs' view, it was necessary to wait until the close of expert discovery "to confirm what causes of action were viable through common proof." Pls.' Br. at 8–10; *see also* R. 165, Pls.' Reply at 2–5. InSinkErator, on the other hand, emphasizes the Plaintiffs' "years-long delay in seeking amendment" as evidence that no good cause exists. Def.'s Resp. at 3–4. In reply, the Plaintiffs argue

---

[5]The sets of states for each multi-state class overlap only in part. The proposed, putative class asserting common-law fraud consists of Illinois, Missouri, Colorado, Georgia, North Carolina, Utah, Virginia, West Virginia, and Wisconsin. Proposed Second Am. Compl. ¶ 166. The proposed, putative class asserting violations of consumer-protection statutes comprises Illinois, Missouri, Florida, Massachusetts, Michigan, Minnesota, New Jersey, New York, and Washington. *Id.* ¶ 167.

The Plaintiffs no longer seek to certify the former class. *See* Def.'s Resp. at 1 n.2; R. 160, Pls.' Mot. to Certify Class at 2–3; Pls.' Class-Certification Br. at 3. So the dispute concerns only whether the Plaintiffs may seek certification on behalf of the multi-state class for violations of the respective states' consumer-protection statutes.

that denying leave to amend under Rule 16(b) requires not only the "passage of time" but also "prejudice to the defendant." Pls.' Reply at 2 (quoting *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014)).

The Plaintiffs conflate the Rule 16(b) and Rule 15(a) standards. It is true that, under Civil Rule 15(a), "delay on its own is *usually* not reason enough for a court to deny a motion to amend." *Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011) (emphasis added). *But see Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988) (recognizing "the longer the delay, the greater the presumption" of prejudice to parties and public); *McCoy*, 760 F.3d at 687 (affirming denial of leave to add some claims "for undue delay alone"). But as the Plaintiffs also acknowledge, for purposes of Civil Rule 16(b), "[t]he central consideration in assessing whether good cause exists is the *diligence* of the party seeking to amend." *Allen*, 41 F.4th at 852–53 (emphasis added); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (distinguishing between cases that apply Rule 15(a) and Rule 16(b)).

The Plaintiffs fail to show the requisite diligence to justify amendment. Although it is true that the Plaintiffs' motion to amend comes shortly after the close of expert discovery, there is no explanation why expert discovery affected the identification of the alleged violations of other states' consumer-protection statutes. Instead, the Plaintiffs make the bare assertion that "expert testimony" informed their assessment of "what statutory damages were available under similar statutes." Pls.' Reply at 4. But the Plaintiffs "had all the information [they] needed to include th[ose] claim[s] much earlier in the litigation," *see Cage v. Harper*, 42 F.4th 734, 743 (7th Cir.

6

2022), even back at the time that they filed the First Amended Complaint.[6] And the Plaintiffs fail to explain *what* expert testimony was needed to identify "which states have similar consumer protection laws." Pls.' Br. at 15; *see also Allen*, 41 F.4th at 853 ("[N]or does he otherwise explain how the discovery disputes frustrated his ability to move to amend earlier."). Whether measured with respect to the Rule 16(b) deadline (June 10, 2024) or to the date of the Court's opinion dismissing parts of the Plaintiffs' case (March 31, 2025), this specific change is at least a year overdue without an adequate explanation.

No other, less-central factor alters the analysis under Rule 16(b). For example, it is true that plaintiffs generally need not plead legal theories and can alter both legal theories and proposed class definitions over the course of litigation. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859–60 (7th Cir. 2017); *Ali v. City of Chicago*, 34 F.4th 594, 602–03 (7th Cir. 2022) (citing *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015)). But this proposal expands rather than narrows the class definition, *see Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018), and presents a surprise change in the legal theories on the table, *see Vidimos,*

---

[6]The Plaintiffs argue in part that they sought leave to amend only once, at the close of expert discovery, to avoid piecemeal amendment. Pls.' Reply at 4. But none of the checkpoints they cite—the dismissal of some theories, the close of fact discovery, or the close of expert discovery—seems to bear any relevance on the identification of other states' consumer-protection statutes. Indeed, they cite to one multi-state class that was certified nearly two years before this suit began. Pls.' Br. at 16 (citing *Benson v. Newell Brands, Inc.*, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021)). So the Plaintiffs "should have known about these theories when" they filed the First Amended Complaint. *See McCoy*, 760 F.3d at 687.

*Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996).[7] "There must be a point at which a plaintiff makes a commitment to the theory of its case." *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993); *see also Doe v. Howe Mil. Sch.*, 227 F.3d 981, 990 (7th Cir. 2000) ("[P]leading is not like playing darts: a plaintiff can't keep throwing claims at the board until she gets one that hits the mark."). The Plaintiffs' lack of good cause drives the Court's decision, and nothing else strongly counsels in favor of a different conclusion.

The outcome may well have been different if only Civil Rule 15(a) governed. Remember the difference between Rule 15(a) and Rule 16(b): the former requires an opposing party to show, or a court to find, a reason *not* to permit amendment, and the latter shifts the burden onto the moving party to demonstrate good cause and diligence to *justify* amendment. Under the more-forgiving Rule 15(a), the Court agrees with the Plaintiffs that the undue delay alone would not have sufficed to deny leave to amend. *See McCoy*, 760 F.3d at 687. And InSinkErator likely would not have been prejudiced. To start, InSinkErator's arguments rely on the premise that more named plaintiffs, one for each state in the multi-state class, would need to be disclosed and

---

[7]The Plaintiffs contend that there is no surprise because InSinkErator has known all along that nationwide liability may have been on the table. Pls.' Reply at 8–9 & n.6. But the First Amended Complaint proposes a nationwide class asserting *common law* claims alongside four statewide classes advancing *statutory* theories. Although it may have been permissible either (1) to narrow a proposed class definition; or (2) to change a legal theory, the Plaintiffs' maneuver combines both and results in surprise. Put another way, plaintiffs may not begin litigation by pleading a nationwide class premised on one type of liability theory as a way to preserve every possible theory of liability subject to clarification much later.

8

available for protracted discovery, thus leading either to futility (if no additional named plaintiffs are added) or prejudice (if they are). *See* Def.'s Resp. at 4–11.

But it would have been possible for Miller and Hicks by themselves to seek to represent a multi-state class. As the Plaintiffs note, many of InSinkErator's arguments relate to whether Miller and Hicks suffice as class representatives and whether the specific set of states have consumer-protection laws that are sufficiently similar that class resolution makes sense. Pls.' Br. at 10, 15; Pls.' Reply at 5–9. These issues, however, do not relate to the sufficiency of the pleadings and instead concern the propriety of class certification. *See, e.g.*, *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 858–59 (N.D. Ill. 2021); *Clark v. Blue Diamond Growers*, 2023 WL 4351464, at *5–6 (N.D. Ill. July 5, 2023) (collecting cases and describing the class-certification approach as "prevailing view" in this District). The lack of a named plaintiff from the new states would not have been an obstacle. Put another way, although the Plaintiffs cannot amend their pleadings in an effort to seek certification of the entire multi-state class asserting violations of nine states' consumer-protection laws, they may seek certification of a multi-state class asserting violations of Illinois, Missouri, and Massachusetts consumer-protection laws.

InSinkErator opposes the re-inclusion of Massachusetts consumers. Def.'s Resp. at 7, 11. To be sure, the Plaintiffs are not permitted to amend their pleadings, even in part, to re-insert theories pertaining to Massachusetts law. But class definitions still are malleable and "are often narrowed or expanded as the parties engage in discovery at the class certification stage." *Ali*, 34 F.4th at 603. There are, of course,

limits to how much a new class definition may expand the scope of litigation. *See Beaton*, 907 F.3d at 1023. But the specific Massachusetts expansion here is modest: the Plaintiffs initially alleged violations of Massachusetts state law, First Am. Compl. ¶¶ 365–77, and the Court noted in deciding InSinkErator's motion to dismiss that the statutory claim likely would have survived, *Miller,* 2025 WL 964905, at *10 n.6.

Finally, both the opposed and unopposed changes to the factual allegations are unnecessary and thus do not justify amendment. On even the opposed change, InSinkErator acknowledges that the Plaintiffs have no obligation to amend their pleadings "to affirmatively conform allegations to facts revealed in discovery." Def.'s Resp. at 12 n.9. Indeed, "[t]he federal rules do not contemplate that parties will amend their pleadings to reflect new information obtained in the discovery process." *Ash v. Wallenmeyer*, 879 F.2d 272, 274 (7th Cir. 1989). The Plaintiffs' intent to narrow their claims will nevertheless be relevant to the class-certification briefing as well as any motion for summary judgment. But it is unnecessary to amend the pleadings to reflect the parties' shared understanding of the remaining legal theories or to preview a narrower view of the facts supported by the record.

## IV. Conclusion

The Plaintiffs' motion for leave to amend, R. 152, is denied. For the sake of clarity, the Court notes that, although the Plaintiffs may have abandoned some of these arguments, the following theories remain from the First Amended Complaint:

- Negligence (Count 5)
- Fraudulent Concealment for the service-life representation (Count 6)

10

- Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (Count 7)
- Violation of the Missouri Merchandise Practices Act (Count 12)

As noted, however, the Plaintiffs may seek to certify a multi-state class that also includes Massachusetts consumers, consistent with Count 11 as previously alleged. But the Plaintiffs may not seek to include in the consumer-protection-statute class any consumers in Florida, Michigan, Minnesota, New Jersey, New York, Washington, or any other state. There is no need to amend the motion to certify the class, R. 160, to comport with this Opinion. The four-brief motion schedule, 05/28/26 Minute Entry, shall remain in place.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: August 7, 2026

11